UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
DYLAN SCHLOSSBERG, Individually and
on Behalf of All Others Similarly Situated,

                Plaintiff,

v.

BUMBLE TRADING, INC., and BUMBLE
HOLDING LTD.,

                Defendants.
------------------------------------------------------- X

No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Dylan Schlossberg ("Plaintiff"), individually and on behalf of all others similarly situated, alleges as follows based on personal knowledge of his own acts and observations and, otherwise, upon information and belief based on investigation of counsel:

## NATURE OF THE CASE

1. Bumble Trading, Inc. and Bumble Holding Ltd. (together "Bumble" or "Defendants") own and operate a subscription-based dating service which charges a fee, called Bumble Boost.

2. As further detailed herein, Bumble's uniform policies and practices for Bumble Boost violate the New York Dating Services Law, N.Y. G.B.L § 394-c and deprive consumers of their rights under the Dating Services Law. Bumble fails to provide consumers with the required "Dating Service Consumer Bill of Rights" as required by the Dating Services Law. In addition, Bumble does not provide consumers with the statutorily required notice of their right to cancel the contract within three business days and to obtain a full refund without any obligation.

3. In fact, Bumble has a uniform policy of denying refunds requested by Plaintiff

1

and other class members, which violates the Dating Services Law. As a result of Bumble's conduct, Plaintiff and the class members suffered injury in the form of loss of refunds, deprivation of their rights of rescission, and the deprivation of their statutory right to exercise the option to try the service and cancel within three business days, without obligation.

4. Bumble's violations of the Dating Services Law constitute unlawful and deceptive acts under New York's consumer fraud law, N.Y. G.B.L. § 349. As a result of Bumble's conduct, Plaintiff and other consumers who paid for a Bumble Boost subscription were deprived of the ability to exercise their statutory rights to cancel and obtain a refund. Plaintiff, on his own behalf, and on behalf of a class of nationwide purchasers, seeks statutory, equitable, injunctive, and monetary relief as set forth below.

**PARTIES**

5. Plaintiff Dylan Schlossberg is a resident of Rockland County, New York.

6. Defendant Bumble Trading, Inc. is a corporation organized under the laws of Delaware, having is principal place of business in Dallas, Texas.

7. Defendants Bumble Holding, Ltd., is a corporation organized under the laws of the United Kingdom having its principal place of business in London, United Kingdom.

**JURISDICTION AND VENUE**

8. This Court has subject-matter jurisdiction over this action pursuant to Title 28, United States Code, section 1332, as amended by the Class Action Fairness Act of 2005, in that the aggregate claims of Plaintiff and the proposed class members (as defined herein) exceed the sum or value of $5,000,000, exclusive of interest and costs.

9. There is minimal diversity of citizenship between Plaintiff and the proposed class members and Defendants in that each Defendant is headquartered outside of the state of New

York and Plaintiff is a citizen and resident of New York state asserting claims on behalf of himself and others who reside in New York state and throughout the nation.

10. This Court has personal jurisdiction over Defendants because each do business in and have sufficient minimum contacts with this state, including within this District, and/or have otherwise intentionally availed themselves of the markets in this state through the promotion, marketing, and sale of their products and/or services in this state, and in this District, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this District pursuant to Title 28, United States Code, section 1391 because this District has personal jurisdiction over Defendants.

## FACTUAL ALLEGATIONS

**The Bumble Mobile Software**

12. Bumble owns and operates a mobile software application, which provides its users with dating services. *See* http://thebeehive.bumble.com/bumble-dating/ (last visited September 10, 2018).

13. The software application is free for consumers to download and use on their smartphones or other computer devices. When the app is downloaded, the owner of the app is identified as Bumble Holding, Ltd.

14. According to Bumble, as of March 2018, the Bumble app had 30 million users.

15. Through the software application, Bumble matches users for the purpose of dating. Based on an algorithm, Bumble shows users potential matches for dating that comply with the user's preferences for age, location, and other criteria. The user is shown a "card" with a photo and profile of a potential match near their geographic location. The user is given a choice to indicate interest, or lack of interest, in the potential match by swiping the card right to indicate

an interest and left to indicate lack of interest. Bumble then matches two users only if they have mutually right-swiped on one another's cards. For heterosexual matches, Bumble allows only women (and not men) to send a chat message to their matches. Bumble requires women to send a message within 24 hours of the match being made; otherwise the match expires and the women can no longer message their match. (If the match is a same-sex match, either person can start a chat message within 24 hours of being matched. If a chat is not initiated within 24 hours, the match expires).

16. Bumble also provides a match queue screen where users can see new matches, ongoing conversations with other matches, and matches that are about to expire.

17. In some respects, Bumble is considered very similar to one of its competitors, the Tinder dating app. In fact, Match Group, LLC ("Match"), parent company of the owner and operator of Tinder is suing Bumble and alleging that Bumble's software app infringes upon Tinder's patent for a "computer embodiment of a matchmaking process" for purposes of dating.[1] Bumble also sued Match alleging that the Tinder Gold dating app is a copy of Bumble's Bumble Boost feature.

**Bumble Boost, Bumble's Paid Subscription Service**

18. Bumble offers users "Bumble Boost," which is an optional, paid subscription package. Bumble claims that Boost enhances the dating services on the Bumble app by allowing users to "Double Your Matches" and "Take Control of Your Dating Experience." *See*

---

[1] *See Match Group, LLC v. Bumble Trading Inc.*, USDC, Western Dist. of Texas, Case No. 6:18-cv-00080 ("The inventions claim a specific computer method, system, and computer-readable medium of matchmaking where parties are not permitted to communicate unless and until a match is made, user profiles are specifically "online-dating profiles" and those profiles must be associated with a "social networking platform," a type of platform that itself is computer specific…these limitations recite a particularly advantageous computer embodiment of a matchmaking process that also solves computer-specific problems related to the ease of fake accounts and profiles, the inconvenience of filing out profiles, and the problem of certain online dating users being inundated with messages.")

http://thebeehive.bumble.com/bumbleblog/introducing-bumble-boost?rq=bumble%20boost (last visited September 10, 2018).

19. According to Bumble, Boost subscribers enjoy a number of privileges in the matchmaking process that are not available to regular users: They have the ability to see everyone who has right-swiped them (*i.e.,* an interest was shown), "extend []matches by an additional 24 hours," and "rematch with expired connections." *See* What is Bumble Boost? https://bumble.com/en-us/faq# (last visited September 10, 2018).

**Bumble's Terms and Conditions**

20. According to Bumble's Terms and Conditions, it has a "no refund" policy when a consumer cancels the Bumble Boost subscription. Specifically, the Terms and Conditions provide as follows: "Once you have requested a Premium Service or In-App Product, you authorize us to charge your chosen Premium Payment Method and your payment is non-refundable." *See* Exhibit A, section 5. Further, Bumble's FAQ's also inform consumers that all purchases are non-refundable. *See* https://bumble.com/en-us/faq# ("I'm not happy with my Bumble Boost subscription. How can I get a refund? As stated in our Terms and Conditions, any purchases made in the Bumble app are non-refundable.").

21. Bumble's conduct violates the New York Dating Services Law as well as New York's Deceptive Acts and Practices Law.

## NEW YORK DATING SERVICES LAW

22. New York has a Dating Services Law, N.Y. G.B.L. § 394-c, which provides, in pertinent part, as follows:

> (a) Every contract for social referral service shall provide that such contract may be cancelled without a cancellation fee within three business days after the date of receipt by the buyer of a copy of the written contract.

(b)     In every social referral service sale, the seller shall furnish to the buyer a fully completed copy of the contract pertaining to such sale at the time of its execution, which is in the same language, e.g., Spanish, as that principally used in the oral sales presentation and which shows the date of the transaction and contains the name and address of the seller, and in the immediate proximity to the space reserved in the contract for the signature of the buyer and in not less than ten-point bold face type, a statement in substantially the following form:

YOU, THE BUYER, MAY CANCEL THIS CONTRACT WITHOUT ANY CANCELLATION FEE WITHIN THREE (3) BUSINESS DAYS AFTER THE DATE OF THIS CONTRACT.  SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.

(c)     Notice of cancellation shall be delivered by certified or registered United States mail at the address specified in the contract.

(d)     At the time the buyer signs the social referral service contract, a completed form in duplicate, captioned "NOTICE OF CANCELLATION", which shall be attached to the contract and easily detachable, and which shall contain in not less than ten-point bold face type the following information and statements in the same language, e.g., Spanish, as that used in the contract:

NOTICE OF CANCELLATION
(enter date of transaction)

(Date)

YOU MAY CANCEL THIS CONTRACT, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE (3) BUSINESS DAYS AFTER THE DATE OF THIS CONTRACT BY MAILING THIS SIGNED AND DATED NOTICE OF CANCELLATION BY CERTIFIED OR REGISTERED UNITED STATES MAIL TO THE SELLER AT THE ADDRESS SPECIFIED HEREIN. IF YOU CANCEL, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT WILL BE RETURNED WITHIN TEN (10) BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE. TO CANCEL THIS TRANSACTION, MAIL BY CERTIFIED OR REGISTERED UNITED STATES MAIL A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE TO:

(Name of Seller)                                         NOT LATER THAN _____

(Address of Seller)                                                                              (Date)

N.Y. G.B.L. § 394-c(7)(a)-(d).

23. The Dating Services Law also requires that consumers be provided with a Dating Service Consumer Bill of Rights:

> In every social referral service sale or renewal, the seller shall provide each purchaser with a clear and conspicuous, separate written notice, to be known as the "Dating Service Consumer Bill of Rights", which shall contain at least the following information:
>
> Dating Service Consumer Bill of Rights
>
> 1. No social referral service contract shall require the payment by you, the purchaser, of an amount greater than one thousand dollars. In addition, no such contract may extend over a period of time greater than two years.
>
> 2. No social referral service contract shall require you, the purchaser, to purchase a good or service which is directly or indirectly related to the social referral service. These extra services are known as ancillary services and, while these ancillary services may be offered to you, the law prohibits the seller from requiring that you purchase this service as a condition of your social referral service contract.
>
> 3. If your social referral service contract costs more than twenty-five dollars, the seller must furnish a minimum number of referrals per month to you. If this minimum amount is not furnished to you for two successive months, you have the option of cancelling the contract and receiving a full refund of all the money you paid, less a cancellation fee which cannot exceed either fifteen percent of the cash price or a pro rata amount for the number of referrals furnished to you.
>
> 4. Your social referral service contract must specify the distance which you, the purchaser, are willing to travel to meet any social referral. No social referrals shall be furnished where you and the referral live at a distance greater than the distance specified in the contract.
>
> 5. The provider must have an established policy to address the situation of your moving outside the area it services. This policy must be explained in your contract.
>
> 6. If any provision of the social referral service contract is violated, you have the right to bring a court action against the provider which has violated the contract.

N.Y. G.B.L. 394-c(7)(e).

24. New York's Dating Services Law is clear and applies to "social referral services." N.Y. G.B.L. § 394-c(1). The law defines a "social referral service" to "include any service for a fee providing matching of members of the opposite sex, by use of computer or any other means, for the purpose of dating and general social contact." N.Y. G.B.L. § 394-c(1)(a). Because Bumble Boost is a fee-based service, by computer, with the purpose of dating and general social contact, it is a "social referral service" under the Dating Services Law.

### PLAINTIFF SCHLOSSBERG'S INDIVIDUAL ALLEGATIONS

25. Relying on representations made by Bumble, that becoming a paid Bumble Boost subscriber would unlock features and limitations that existed on his membership, Plaintiff Schlossberg subscribed to Bumble Boost on or about June 28, 2017.

26. Plaintiff paid $24.99 for a one-month subscription. Like all Bumble Boost subscriptions (monthly, or for longer periods of time), Plaintiff's membership was scheduled to automatically renew each month or each period.

27. At no time did Bumble provide Plaintiff with a notice of his right to cancel his contract. This was a violation of New York General Business Law, Section 394-c(a)-(d).

28. At no time did Bumble provide Plaintiff with the Dating Service Consumer Bill of Rights. This was a violation of New York General Law, Section 394-c(7)(e).

29. Bumble's Terms and Conditions explicitly state that Plaintiff's subscription would remain active until the end of Plaintiff's subscription period following Plaintiff's cancellation of the subscription.

30. Upon subscribing, Plaintiff discovered that Bumble Boost was not what was advertised. Although some features were unlocked, they were not unlocked for the entire subscription period. For example, Bumble Boost allows a subscriber to extend the time that a

match expires beyond the 24-hour period; however, Bumble limited the number of extended matches allowed to Plaintiff when he paid for the Bumble Boost subscription.

31. Believing that Bumble Boost's features were misrepresented and not the value for which he paid, Plaintiff cancelled his subscription and requested a full refund within three business days of his purchase.

32. To date, well more than ten business days have passed since Plaintiff cancelled his contract; however, Bumble has failed to issue a refund of the subscription fee.

33. The material circumstances surrounding this experience by Plaintiff were the same, or nearly the same, as the other class members Plaintiff proposes to represent, and Plaintiff and all putative class members were required to pay, and did pay, money for this subscription marketed and sold by Bumble.

### BUMBLE'S VIOLATIONS OF THE NEW YORK DATING SERVICES LAW AND NEW YORK G.B.L. SECTION 349 CAUSE ACTUAL INJURY TO PLAINTIFF AND CLASS MEMBERS

34. At the time Plaintiff and class members subscribed to Bumble Boost, Bumble's Terms and Conditions failed to include the statutory language mandated by New York General Business Law, Section 394-c(7)(a)-(d). Bumble also failed to notify Plaintiff and class members of their right to cancel the contract without penalty after three business days of the date of the contract, and to obtain a refund of all moneys paid under the contract within ten business days of cancellation, in violation of New York General Business Law, Section 394-c(7)(e).

35. In addition, in violation of New York General Law, section 394-c(7)(b), Bumble's Terms and Conditions failed to include the name and address of the dating service to which the notice of cancellation was to be mailed and the date that such notice must be mailed for a valid cancellation.

36. Moreover, Bumble's no-refund policy informs consumers that they cannot obtain a refund. However, this "no-refund" policy is in direct violation of their rights under New York General Business Law, Section 394-c(4).

37. Bumble also failed to provide Plaintiff and class members with the statutorily required notice of consumers' "Dating Service Consumer Bill of Rights."

38. Bumble's No Refund Policy is deceptive, materially misleading, and illegal under New York law. Consumers, including Plaintiff and class members, reasonably assume that the company's no refund policy is legal.

39. The New York Dating Services Law was enacted to protect against fraud and misrepresentation in social matchmaking services. To protect against this harm, the law affords consumers with a "cool-off period" – a right and option to essentially use the service for three business days, with the right of cancelling and getting their money back without penalty or obligation. This allows consumers to test the services and to determine whether the service being offered and advertised conforms to the representations and advertisements of the company. By affirmatively telling consumers that they cannot obtain refunds, Bumble chills the ability of consumers to exercise this right and to elect this option to cancel free of obligation and penalty.

40. Had Plaintiff and class members been informed of their rights under the Dating Services Law, they would not have subscribed to Bumble Boost, they would not have been willing to subscribe at the price they paid, or they would have exercised their right to cancel the contract and obtain a refund pursuant to the Dating Services Law.

41. Other comparable dating app services, such as Tinder, inform New York residents of their right to cancel their subscription, without penalty or obligation, at any time prior to

midnight of the third business day following the date they subscribed. *See e.g.*, https://www.gotinder.com/terms/us-2018-05-09 (last visited September 12, 2018).

42. Plaintiff and class members suffered actual injury as a result of Bumble's acts and omissions. As a direct result of Bumble's failure to comply with the Dating Services Law and the New York G.B.L. § 349, Plaintiff and class members suffered injury in that they were deprived of funds due to be returned to them pursuant to their cancellation rights under Dating Services Law and they were deprived of their statutory right to cancel the subscription, rescind any contractual agreement, and obtain a refund under the Dating Services Law.

## CLASS ALLEGATIONS

43. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure, Rules 23(a), (b)(2), (3), and (c)(4) on behalf of himself and the following class of consumers (each a "class member" of the "Class"):

> All persons within the United States who purchased a Bumble Boost subscription from Defendants, any time from three years prior to the date this action is first filed through the date of certification, which subscription (1) failed to provide that the contract may be cancelled without a cancellation fee within three business days after purchase; or (2) failed to include a notice of cancellation; and/or (3) failed to provide a Dating Service Consumer Bill of Rights to the person.

44. Excluded from the Class are Defendants as well as Defendants' affiliates, employees, officers and directors. Plaintiff reserves the right to amend the definitions of the class if discovery or further investigation reveals that the class should be expanded or otherwise modified.

45. <u>Numerosity/Impracticability of Joinder</u>: The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff reasonably estimates that the proposed Class consists of hundreds of thousands, or millions, of consumers.

46.  <u>Commonality and Predominance</u>: Common questions of law and fact predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one class member to another and which may be determined without reference to the individual circumstances of any class member, include, but are not limited, to the following:

a. Whether the New York Dating Services Law applies to Bumble and class members nationwide;

b. Whether New York's deceptive practices law, N.Y. G.B.L § 349, applies to Bumble and class members nationwide;

c. Whether Bumble qualifies as a social referral service under the Dating Services Law;

d. Whether Bumble's Terms and Conditions violate the Dating Services Law;

e. Whether Bumble provided Plaintiff and class members with the Dating Services Consumer Bill of Rights;

f. Whether Bumble's no-refund policy violates the Dating Services Law;

g. Whether Bumble's acts and practices constitute unlawful and deceptive acts under the New York General Business Law, Section 349;

h. Whether, as a result of Bumble's conduct, Plaintiff and the class members suffered injury; and

i. Whether, as a result of Bumble's conduct, Plaintiff and the class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

47.  <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class because Plaintiff and all class members were injured by the same wrongful practices in which Bumble

engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class and are based on the same or similar legal theories.

48. <u>Adequacy</u>: Plaintiff will fully and adequately protect the interests of the members of the Class and has retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation. Neither Plaintiff nor his counsel has interests contrary to or conflicting with those of the Class. Bumble has no defenses unique to Plaintiff.

49. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

50. Plaintiff does not anticipate any difficulty in the management of this litigation.

51. Bumble has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

52. Without a class action, Bumble will continue a course of action that will result in further damages to Plaintiff and the Class and will likely retain the benefits of their wrongdoing.

53. Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violations of the New York Dating Services Law,
### New York General Business Law, Section 394-c
### (On Behalf Of Plaintiff and the Class)

54. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein. Plaintiff brings this claim under N.Y. G.B.L. § 394-c on his own behalf and on behalf of each class member.

55. Bumble Boost is a "social referral service" as that term is defined in New York General Business Law, Section 394-c(1)(a).

56. Bumble's conduct, as alleged above, violates the New York Dating Services Law, New York General Business Law, Section 394-c (7)(a) through 7(e). As a result of these violations of law, Plaintiff and class members were injured.

57. Bumble's violations of Section 394-c of New York's General Business Law threaten additional injury if the violations continue. Plaintiff and class members have no adequate remedy at law.

58. N.Y. G.B.L. § 394-c(9)(b) provides in part as follows: "Any person who has been injured by reason of a violation of this section may bring an action in his or her own name to enjoin such violation, an action to recover his or her actual damages or fifty dollars whichever is greater, or both such actions."

59. Pursuant to N.Y. G.B.L § section 394-c, Plaintiff, on his own behalf and on behalf of the Class, seeks the greater of actual or statutory damages, costs and expenses, pre and post-judgment interest.

60. Plaintiff, on his own behalf and on behalf of the Class further seeks equitable relief against Bumble. Pursuant to N.Y. G.B.L § 394-c(9)(b), this Court has the power to award

14

such relief, including but not limited to, an order declaring Bumble's practices as alleged herein to be unlawful, an order enjoining Bumble from undertaking any further unlawful conduct, and an order directing Bumble to refund to Plaintiff and the Class all amounts wrongfully collected or withheld.

## SECOND CLAIM FOR RELIEF
### Violations of Section 349 of the New York General Business Law, Deceptive Acts and Practices
### (On Behalf Of Plaintiff and the Class)

61. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein. Plaintiff brings this claim under N.Y. G.B.L. § 349 on his own behalf and on behalf of each class member.

62. Plaintiff and Class Members are "consumers" as defined in Section 349 of the New York General Business Law.

63. Bumble has engaged in, and continues to engage in, deceptive acts and practices in violation of N.Y. G.B.L § 349. At all times relevant, Bumble conducted trade and commerce within the meaning of Section 349 of the New York General Business Law.

64. Further, Bumble's acts and practices were misleading in a material way. Bumble's acts and practices as described above are per se illegal as they violate the New York Dating Services Law.

65. Bumble's failure to inform Plaintiff and class members of their statutory rescission rights and other rights in the Dating Service Bill of Rights is misleading in a material way.

66. Bumble's deceptive business practices adversely impacted a class of purchasers, and therefore, constitute consumer-oriented conduct under Section 349 of the New York General Business Law.

67. As a direct result of Bumble's deceptive acts and practices, Plaintiff and class members suffered injury.

68. Bumble's violations of N.Y. G.B.L § 349 have damaged Plaintiff and other class members, and threaten additional injury if the violations continue.

69. The aforementioned acts are willful, unfair, unconscionable, deceptive, and contrary to the public policy of New York, which aims to protect consumers.

70. Pursuant to section 349 of the New York General Business Law, Plaintiff, on his own behalf and on behalf of the Class, seeks the greater of actual or statutory, as well as treble damages, costs and expenses, pre and post-judgment interest, and attorneys' fees.

71. Plaintiff, on his own behalf and on behalf of the Class further seeks equitable relief against Bumble. Pursuant to N.Y. G.B.L § 349(h), this Court has the power to award such relief, including but not limited to, an order declaring Bumble's practices as alleged herein to be unlawful, an order enjoining Bumble from undertaking any further unlawful conduct, and an order directing Bumble to refund to Plaintiff and the Class all amounts wrongfully collected or withheld.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

72. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein. Plaintiff brings this claim on his own behalf and on behalf of each class member.

73. Plaintiff and the class members have conferred upon Bumble a benefit, including monies paid retained by Bumble, that should lawfully be refunded to them pursuant to their cancellation and rescission rights under the New York Dating Services Law.

16

74. These benefits came at the expense of Plaintiff and class members. As a result of Bumble's illegal and deceptive conduct, Plaintiff and class members suffered monetary damages and loss of the cancellation and rescission rights under the New York Dating Services Law.

75. Under principles of equity and good conscience, Bumble should not be permitted to retain the money and other benefits acquired through the unlawful conduct. All funds, revenues, and benefits unjustly received by Bumble rightfully belong to Plaintiff and class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the Class, respectfully prays:

(a) For an order certifying this action as a class action, appointing Plaintiff as representative of the Class, and appointing his attorneys as counsel for the Class;

(b) For actual, statutory, and treble damages for all applicable claims in amounts to be proven at trial;

(c) For an order permanently enjoining Bumble from engaging in the unlawful practices alleged herein;

(d) For an award of attorneys' fees, costs, and expenses;

(e) For an award of pre and post-judgment interest; and

(f) For such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury of all issues so triable.

Dated: September 13, 2018          Respectfully submitted,

PARASMO LIEBERMAN LAW

By: __/s/Grace E. Parasmo_____
       Grace E. Parasmo
Yitzchak H. Lieberman (*pro hac vice* application to be filed)
7400 Hollywood Boulevard, Suite 505
Los Angeles, California 90046
Telephone: (646) 509-3913
Facsimile: (877) 501-3346
gparasmo@parasmoliebermanlaw.com
ylieberman@parasmoliebermanlaw.com

David C. Parisi (*pro hac vice* application to be filed)
Suzanne Havens Beckman (*pro hac vice* application to be filed)
PARISI & HAVENS LLP
212 Marine Street, Unit 100
Santa Monica, California 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852
dcparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiff Schlossberg, on his own behalf and on behalf of all others similarly situated*